IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MOUANG SAECHAO, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

LANDRYS, INC., a Delaware corporation, and McCORMICK & SCHMICK RESTAURANT CORP., a Delaware corporation,

    Defendants.

No. C 15-00815 WHA

**ORDER RE PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND NOTICE TO THE CLASS**

## INTRODUCTION

In this wage and hour class action, plaintiff moves for preliminary approval of a class settlement agreement. For the reasons stated below, the motion is **GRANTED**, reserving on final approval and on any incentive award, attorney's fees, and costs later.

## STATEMENT

The background of this action has been set forth in a prior order and needs not be discussed in detail herein (Dkt. No. 98). In brief, plaintiff Mouang Saechao filed this action individually and on behalf of five classes of hourly non-exempt employees and former employees at Spenger's Fresh Fish Grotto in Berkeley, California, who allegedly suffered various injuries relating to meal breaks, rest breaks, split-shift premiums, and inaccurate wage statements.

Throughout the case, including after the certification of the class, the parties engaged in extensive class-wide discovery, including several requests for production of documents, interrogatories, and requests for admissions. Defendant produced more than sixty-five thousand pages of documents and tens of thousands of lines of data. The parties met and conferred regarding discovery on various occasions, resulting in amendments and supplementation of responses and one discovery dispute (later withdrawn). Both sides deposed numerous witnesses. Plaintiff also retained an economics expert who conducted a damages study and produced a report based on payroll records, timesheets, paystubs, and employee schedules, *inter alia* (Cohorn Decl. ¶¶ 3–9).

Following class certification, the parties negotiated extensively before Magistrate Judge Joseph C. Spero including attending three settlement conferences that ultimately resulted in the instant classwide settlement agreement. Plaintiff now moves for preliminary approval of the settlement agreement. This order follows a brief from plaintiff and oral argument.

**ANALYSIS**

"A settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotations omitted).

1. **PROPOSED SETTLEMENT.**

Under the proposed settlement, the key terms would be as follows:

**Net Settlement Fund**: The net settlement fund would be $500,000. No later than five business days following preliminary approval, McCormick & Schmick would deposit $20,000 into an escrow account established by the settlement administrator as a deposit towards settlement administration costs, and no later than five business days following final approval, McCormick & Schmick would deposit $500,000 into the escrow account for distribution as follows:

- *Incentive Award*: Saechao intends to request an incentive award of $500, although the settlement agreement "is not contingent on approval

2

of an incentive award or on the amount of any incentive award the Court may choose to make" (Pl.'s Mtn. at 6).

- *Attorney's Fees and Costs*: Class counsel intend to request an award of attorney's fees of up to $150,000 and costs of up to $50,000. The settlement agreement "is not contingent on approval of Class Counsel's request for fees and costs, or on the amount of any such award the Court may choose to make" (*ibid.*).

- *PAGA Allocation*: $12,000 would be paid to settle claims for potential penalties under the Private Attorneys General Act. In accordance with PAGA, 75% of this amount would be paid to the California Labor and Workforce Development Agency and 25% to the PAGA-eligible class members (Settlement Agreement, Section C.7(d)).

- *Payroll Taxes*: McCormick & Schmick's share of payroll taxes (approximately $14,200) would be paid from the settlement fund (*id.*, Section C.8(d); Cohorn Decl. ¶ 22).

- *Allocations to the Class Members*: Following the above deductions, three categories of *pro rata* distributions would be made to the class members as follows (Settlement Agreement Section C.7(c)–(e)).

    - For the members of the meal-break, rest-break, and split-shift classes, each class member would receive a *pro rata* share of the remaining settlement funds based on the total number of shifts worked by that class member during the limitations period (*i.e.*, February 23, 2011 through February 23, 2015) as a proportion of the total number of shifts worked by all settlement class members.[*]

---

[*] The order certifying the class held that class members must submit claim forms for any rest-break claims, inasmuch as McCormick & Schmick had no mechanism for recording whether a rest break was ever taken (or missed). Class counsel believe such a procedure would increase administration costs and decrease participation rates, with little added benefit. Specifically, since both the meal-break and rest-break classes

3

- For all class members that worked within the limitations period applicable under PAGA (*i.e.*, class members that worked at Spenger's from February 23, 2014 through February 23, 2015), the $3,000 allocated to class members would be distributed *pro rata* according to the number of shifts worked as a proportion of the total shifts worked by PAGA-eligible class members during the limitations period.

- For members of the wage-statement class, each class member would receive a *pro rata* share of the remaining settlement funds based on the number of live checks the class member received during the applicable limitations period (*i.e.*, February 23, 2014 through February 23, 2015) as a proportion of the total number of live checks received by all class members during the limitations period.

**Administration Costs**: McCormick & Schmick will pay up to $20,000 in settlement administration costs (not from the settlement fund). After consulting with the proposed settlement administrator, Simpluris, Inc., class counsel expects will sufficiently cover all costs (Cohorn Decl. ¶ 21). Class counsel will pay any excess.

**No reversion**: There would be no reversion to defendants. Any checks returned or uncashed would escheat to the State of California to remain available to class members from the California State Controller's office.

   **2.    COST/BENEFIT TO THE ABSENT CLASS MEMBERS.**

Assuming all of the above deductions are finally approved in the amount specified, the average allocation to each class member, after all deductions, would be $1,273. (The actual allocation will vary depending on each class member's *pro rata* share.)

According to Saechao's expert, the maximum potential recovery for the class is

---

would receive distributions based on the total number of shifts worked, the effect of the claim form would be to shift only a small amount of the distribution to those class members who could specifically recall missed rest breaks. This order holds that no claim form is necessary.

4

1  $918,132.04, plus interest of over $200,000.  Additional penalties under PAGA could also be
2  applied, which could add an additional $921,000, although that sum could be reduced at the
3  district judge's discretion.  75% of that additional sum would be allocated to the California
4  Labor and Workforce Development Agency.  *See* Cal. Labor Code § 2269(i).  Thus, the total
5  available recovery for the class is approximately $1.5 million and the settlement of $500,000
6  represents one third of the available recovery.  Saechao contends that this discount is warranted
7  in light of the litigation risks and the cost of continuing litigation.

8  Saechao's meal-break claim primarily turns on the theory that McCormick & Schmick's
9  use of prospective, blanket meal-break waivers was facially unlawful.  Saechao's theory is
10 based on a non-binding opinion letter from the California Division of Labor Standards
11 Enforcement, the authenticity of which is in doubt.  McCormick & Schmick's defense rests on
12 dictum in *Lewis v. Wendy's International, Inc.*, No. 09-07193, 2010 U.S. Dist. LEXIS 144164,
13 at *27–28 (Mar. 24, 2010) (Judge Margaret M. Morrow).  Thus, there is significant uncertainty
14 in the strength of Saechao's claim.  Moreover, Saechao expects that McCormick & Schmick
15 would appeal any decision ruling the use of prospective, blanket meal-break waivers invalid,
16 inflating the cost of litigation, increasing the risk that the class would recover nothing on that
17 claim, and delaying any actual recovery by several years.

18 McCormick & Schmick also contends that depositions of the class members taken after
19 the class was certified indicated that many employees took *de facto* rest breaks, and thus lack
20 claims based on the denial of such breaks.  Saechao contends McCormick & Schmick had an
21 affirmative duty to relieve employees of duties during rest breaks, but notes that issue is
22 currently pending before the California Supreme Court in *Augustus v. ABM Security Services,*
23 *Inc.*, Case No. S224853, 186 Cal. Rptr. 3d 359 (2015).  That issue, combined with further
24 disputes of law and fact surrounding the rest-break claim adds to the litigation risk.

25 Additional risk exists following *Ling v. PF Chang's China Bistro, Inc.*, 2016 Cal. App.
26 Lexis 227 at *29 (Mar. 25, 2016), in which the California Court of Appeal held that waiting-
27 time penalties cannot be awarded for unpaid meal-break and rest-break premiums, which, if
28 applied here, would foreclose all recovery on the basis of waiting-time penalties.  Saechao

5

argues that *Ling* is contrary to a decision from the California Supreme Court, but the uncertainty nevertheless presents a litigation risk.

Saechao notes that any PAGA penalties could be reduced at the district judge's discretion, further warranting a discount on the total available recovery.

McCormick & Schmick contends it is not liable for the wage-statement claims inasmuch as any wage-statement discrepancies were "isolated" and "unintentional." Although Saechao disputes that characterization, she acknowledges that, if it applied, it could foreclose any penalties under Section 226(e)(3) of the California Labor Code.

Finally, continued litigation would involve substantial cross-motions for summary judgment and possibly trial.

Thus, informed by extensive discovery and contentious settlement conferences before Judge Spero, Saechao concluded that the class faces an appreciable risk that it would recover nothing if it proceeds to trial, and it faces significant litigation costs in any case. That risk sufficiently balances the benefit of a substantial cash payout for the class, even at a discount, at least enough to warrant preliminary approval and an opportunity for comment from the class members.

### 3. SCOPE OF THE RELEASE.

The proposed scope of the release is as follows (Settlement Agreement ¶ C.20(a)):

> All Settlement Class Members (and their assigns, heirs, successors and personal representatives) *except* those Settlement Class Members whose Settlement Notice could not be delivered and/or for whom an address to send payment could not be determined, fully release and forever discharge the Released Parties from any and all rights, duties, obligations, claims, counterclaims, defenses, actions, causes of action, or liabilities with respect to the Claims.

The capitalized term "Claims" is defined to mean "(a) all claims the Court certified in its March 15, 2016 order, as amended on April 7, 2016, and (b) all claims by Class Members for PAGA penalties arising out of the allegations in the first amended complaint filed by March 26, 2015."

Additionally, plaintiff, solely on her own behalf and not on behalf of any other Class Member, will fully generally release all claims, known and unknown, that she has or may have

6

against McCormick & Schmick as of the date she executed the Settlement Agreement.

This order holds the proposed scope of the release is appropriately limited to those held appropriate for class treatment, with the addition of all claims for penalties under PAGA (which do not require class certification).

### 4. INCENTIVE PAYMENT AND ATTORNEY'S FEES.

The settlement agreement contemplates an incentive payment of $500 to Saechao for her efforts, and class counsel intend to seek $150,000 in attorney's fees and $50,000 in costs. The proposed settlement is not contingent on approval of the anticipated motion for attorney's fees and costs or the incentive payment. Incentive payments and the large sum sought for fees and expenses will be decided later. Plaintiff must file a separate motion for attorney's fees and costs at the final approval stage on the schedule detailed below.

### 5. NOTICE AND HEARING ON FINAL APPROVAL.

The parties have agreed to a proposed form of notice. The notice procedure is to be administered by Simpluris, Inc. Notice will be sent to all class members via fist class mail and, when available, by email. Notice will also be published in English and Spanish via a website to be established by the settlement administrator. The proposed form of notice indicates in a separate bolded sentence written in Spanish that a full translation is available at that website. The parties propose a 45-day opt-out period.

The proposed form of notice is hereby **APPROVED**, except that the parties shall also publish notice by newspaper. Simpluris, Inc., is **APPROVED** as settlement administrator.

### CONCLUSION

Subject to final approval of the settlement and to the extent stated above, plaintiff's motion for preliminary approval of the settlement agreement is **GRANTED**. The proposed form of notice (without the claim form for rest break claims), to be administered by Simpluris, Inc., is also **APPROVED**, subject to the additional requirement that notice also be made by newspaper publication. Please note that jurisdiction over all matters relating to the interpretation, administration, implementation, effectuation, and enforcement would be retained for only three years from the date of final approval.

7

The following dates are hereby set. Class notice shall be disseminated by **JUNE 13**. Class counsel should move for (1) final approval of the settlement, (2) attorney's fees and costs, and (3) any incentive award for Saechao by **JULY 14**. Class members must postmark and mail to the claims administrator any written objections to the settlement by **JULY 28**. Class members must also postmark and mail any written requests to opt out of the class by **JULY 28**. Class counsel will then file a reply brief in support of the final approval motion and responding to any objections by **AUGUST 4**. The final approval hearing will be **AUGUST 18**.

**IT IS SO ORDERED.**

Dated: May 25, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE